**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | |
|---|---|
| Robert C. Campbell and Brenda Southern, individually and as husband and wife,<br><br>        Plaintiffs,<br><br>vs.<br><br>BNSF Railway Company, a Delaware corporation; Roland S. Pederson; KC Transport, LLC, a Montana corporation; and Berthold Farmers' Elevator LLC, a North Dakota corporation,<br><br>        Defendants. | **ORDER DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 4:09-cv-49 |

_____

Before the Court is Defendant Berthold Farmers' Elevator LLC's motion for partial summary judgment filed on August 24, 2010. See Docket No. 55. The Plaintiffs filed a response in opposition to the motion on September 10, 2010. See Docket No. 62. Defendant BNSF Railway Company filed a response taking no position on the motion on September 14, 2010. See Docket No. 63. Defendants Roland S. Pederson and KC Transport, LLC filed a motion for partial summary judgment, joining with and incorporating Berthold Farmers' Elevator LLC's motion, on September 14, 2010. See Docket No. 65. Berthold Farmers' Elevator LLC filed a reply brief on September 22, 2010. See Docket No. 70. For the reasons set forth below, the Court denies the motions for partial summary judgment.

**I.      BACKGROUND**

On November 5, 2008, the plaintiff, Robert C. Campbell, was working as a conductor for BNSF Railway Company ("BNSF").  Campbell was operating a train headed westbound near the City of Berthold, North Dakota.  As the train approached a crossing, a tractor trailer owned by KC Transport, LLC and operated by Roland S. Pederson drove onto the tracks.  The train collided with the back end of the tractor trailer.  Campbell suffered injuries as a result of the collision.

On January 25, 2010, Campbell and Brenda Southern filed an amended complaint in which Southern asserts loss of consortium claims against KC Transport, Pederson, and Berthold Farmers' Elevator LLC ("Berthold").  See Docket No. 19.  Campbell and Southern contend that at the time of the accident they were common law husband and wife according to the laws of Montana where they reside.  Campbell and Southern testified in depositions and an affidavit that Southern and her teenage son moved in with Campbell in 2002.  See Docket Nos. 57-1, p. 4; 57-2, p. 7; and 60.  They have lived together since 2002 except for a period of approximately four months and another period of nine days.  See Docket Nos. 57-1, p. 7; 57-2, pp. 8, 76; and 60.  They commingled their assets and wages, had a joint bank account, and owned property jointly.  See Docket Nos. 57-1, pp. 6, 8; and 60.  Southern had health insurance benefits through Campbell's employment and Campbell was a beneficiary on Southern's life insurance policy.  See Docket Nos. 57-1, p. 5; 57-2, p. 6; 60.  Campbell was a member of the local Elks club and Southern had a card as his wife allowing her to attend club functions.  See Docket No. 60.  Campbell would sometimes introduce Southern to others as his wife.  See Docket No. 57-2, p. 76.

Campbell and Southern entered into an official marriage in a ceremony held in Las Vegas, Nevada on December 7, 2009.  See Docket No. 57-4.  Prior to their official marriage, Campbell and

2

Southern claimed they were single when filing income taxes.  See Docket Nos. 57-1, p. 8; 57-2, p. 75; 68-1; 68-2; 68-3; 68-4; 68-5; and 68-6.  Campbell testified that he began filing taxes jointly with Southern in 2009 "[b]ecause it benefited."  See Docket No. 57-2, p. 75.  Southern also claimed she was single for purposes of determining the amount of her student loan payments prior to their official marriage.  See Docket No. 57-1, p. 8.  Campbell testified in his deposition:

> I want to say one main reason we didn't get married, because then it would have went household income for her loans that she hadn't been paying on when she graduated out of Missoula, Montana, with a good degree, and being's she had kids all them years she got to postpone all them loans and it carried on and on up to a good number, so she started paying a nominal fee once we got together and we got on a budget, and they go by household income and so instead of 800 a month being household income, I think we're paying 178 or 215 now for that loan back.  I said you got to start paying back.  You did it, you got to pay it back.

See Docket No. 57-2, p. 9.  After their formal marriage, Campbell and Southern wore wedding bands and Southern began using Campbell's last name.  See Docket No. 57-1, pp. 12-13.  They did not wear rings prior to their formal marriage.  See Docket No. 57-2, p. 76.

Defendants Berthold, KC Transport, and Pederson contend they are entitled to summary judgment on Southern's loss of consortium claim because, as a matter of law, Campbell and Southern were not common law husband and wife when the accident occurred.  They argue Campbell and Southern did not establish a common law marriage under Montana law because they lived apart for a period of time, they claimed they were single when it was to their financial benefit, and they later entered into an official marriage.  Campbell and Southern argue that genuine issues of material fact exist precluding summary judgment.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## III.    LEGAL DISCUSSION

Defendants KC Transport, Pederson, and Berthold contend Brenda Southern cannot pursue a claim for loss of consortium because she and Campbell were not married at the time of the accident in 2008. North Dakota allows a wife to sue for loss of her husband's consortium. Weigel v. Lee, 2008 ND 147, ¶ 10, 752 N.W.2d 618 (citing Hastings v. James River Aerie No. 2337, 246 N.W.2d 747, 749 (N.D. 1976)). The North Dakota Supreme Court defines "consortium" as "love,

4

companionship, affection, society, comfort, solace, support, sexual relations, and services." Id. (quoting Hastings, 246 N.W.2d at 749-50). Although individuals cannot enter into a common law marriage in North Dakota, the state recognizes valid common law marriages of other states. Pearson v. Pearson, 2000 ND 20, ¶ 8, 606 N.W.2d 128 (citing N.D.C.C. § 14-03-08; Cermak v. Cermak, 1997 ND 187, ¶¶ 7, 9, 569 N.W.2d 280). "The proponent of the common law marriage bears the burden of establishing its validity under the law of the foreign jurisdiction." Id. (citing Brissett v. Sykes, 855 S.W.2d 330, 332 (Ark. 1993); In re Peterson's Estate, 134 N.W. 751, 759 (N.D. 1912); Milburn v. Milburn, 694 N.E.2d 738, 739-40 (Ind. Ct. App. 1998)).

Campbell and Southern contend they were common law husband and wife according to the laws of Montana when the accident occurred. It is undisputed that Montana recognizes common law marriages. In re Estate of Hunsaker, 1998 MT 279, ¶ 31, 291 Mont. 412, 968 P.2d 281 (citing Mont. Code Ann. § 40-1-403). Montana law includes "a disputable presumption that '[a] man and a woman deporting themselves as husband and wife have entered into a lawful contract of marriage.'" Id. (quoting Mont. Code Ann. § 26-1-602(30)) (alteration in original). The proponent of a common law marriage must prove "(1) that the parties were competent to enter into a marriage; (2) that the parties assumed a marital relationship by mutual consent and agreement; and (3) that the parties confirmed their marriage by cohabitation and public repute." Id. (citing In re Estate of Alcorn, 868 P.2d 629, 630 (Mont. 1993)). "Public policy generally favors the finding of a valid marriage." Id. (citing In re Marriage of Geertz, 755 P.2d 34, 37 (Mont. 1988)).

### A. COMPETENCE TO ENTER INTO A MARRIAGE

The parties do not dispute that Campbell and Southern were both competent to enter into a marriage. Both Campbell and Southern testified that they had been married to other individuals before they met, but those marriages were dissolved before they entered into a relationship. The Court finds as a matter of law that Campbell and Southern were competent to enter into a marriage.

### B. MUTUAL CONSENT AND AGREEMENT

The individuals' mutual consent and agreement to enter into a marital relationship "does not need to be expressed in any particular form." Hunsaker, 1989 MT 279, ¶ 34 (citing In re Estate of Slavens, 509 P.2d 293, 295 (Mont. 1973)). It can be implied from the individuals' conduct. Id. (citing Miller v. Townsend Lumber Co., 448 P.2d 148, 151 (Mont. 1968); State v. Newman, 213 P. 805, 807 (Mont. 1923)). The Montana Supreme Court has said "the mutual consent 'must always be given with such an intent on the part of each of the parties that marriage cannot be said to steal upon them unawares.'" Id. (quoting Newman, 213 P. at 807).

Defendants KC Transport, Pederson, and Berthold argue that Campbell and Southern's decision to enter into an official marriage on December 7, 2009 indicates they had not entered into a marital relationship prior to that date. The Montana Supreme Court rejected a similar argument in In re Estate of Murnion, 686 P.2d 893 (Mont. 1984). The Court explained that although the couple had discussed entering into an official marriage, "this intention to formalize did not conflict with the agreement they had made to become husband and wife." Murnion, 686 P.2d at 897. Campbell and Southern's official marriage in 2009, thus, does not negate a prior common law marriage.

In <u>Hunsaker</u>, the Montana Supreme Court considered the purported common law marriage of Anne Barnett and Maurice Hunsaker. Hunsaker had given Barnett an engagement ring and a wedding band. <u>Hunsaker</u>, 1989 MT 279, ¶ 36. They also displayed in their home a grandfather clock with their initials "A" and "M" interlocked with the letter "H" for "Hunsaker." <u>Id.</u> at ¶¶ 7, 37. Barnett testified that she felt married to Hunsaker, and she believed he felt married to her. <u>Id.</u> at ¶ 37. The Court found that Barnett had carried her burden of proving she and Hunsaker had mutually consented and agreed to enter into a marital relationship. <u>Id.</u>

In this case, Campbell and Southern testified that they commingled their assets and wages and bought property together. They believed they had entered into a common law marriage before they became officially married on December 7, 2009. On the other hand, they did not exchange rings and Southern did not begin using Campbell's last name until after they were officially married in 2009. In <u>Murnion</u>, the Montana Supreme Court explained, "The issue of marriage really depended on the credibility of [the alleged common law wife]. The District Court, having an opportunity to observe her and her demeanor on the stand, accepted [her] explanations." <u>Murnion</u>, 686 P.2d at 896. Determining whether Campbell and Southern mutually consented and agreed to a marital relationship is a question the factfinder must consider based on the credibility of Campbell, Southern, and any other witnesses that may testify. The Court finds that a genuine issue of material fact exists as to whether Campbell and Southern mutually consented and agreed to a marital relationship.

### C.     COHABITATION AND PUBLIC REPUTE

Defendants KC Transport, Pederson, and Berthold also argue that Campbell and Southern have not confirmed their marriage by public repute because they both asserted they were single when filing income tax returns, and Southern asserted she was single for purposes of determining her student loan payments. Campbell and Southern contend there is a genuine issue of material fact as to whether they confirmed their marriage by public repute. The Montana Supreme Court has explained, "As to public repute, we consider how the public views the couple. Relevant to this inquiry is whether the couple held themselves out to the community as husband and wife. A common-law marriage does not exist if the parties have kept their marital relationship secret." Hunsaker, 1989 MT 279, ¶ 38 (citations omitted). The Court explained further in Hunsaker:

> [C]ohabitation and public repute are continuing factors that extend through the life of the marriage. While mutual consent and agreement to enter into a marriage must take place at a set time, the party asserting that a common-law marriage exists does not need to prove the exact date that this occurred. The party asserting the existence of a common-law marriage must, however, prove that the three elements of common-law marriage all existed at one time.

Id. at ¶ 43 (citation and quotes omitted).

In Hunsaker, the Montana Supreme Court held that Barnett and Hunsaker had held themselves out to the community as husband and wife because they had a sign on their home that said, "The Hunsakers," their answering machine message referred to them as the Hunsakers, and they introduced each other to others as "my husband" or "my wife." Id. at ¶ 41. The Court did not find it dispositive or persuasive that Barnett and Hunsaker had asserted they were single when filing their income taxes, or that the accountant that prepared their taxes was not told that they were married. Id. at ¶ 11. In In re Estate of Vandenhook, 855 P.2d 518 (Mont. 1993), the Court held that there was no genuine issue of material fact as to whether the couple had confirmed their marriage

by public repute because they told no one that they had decided to enter into a marital relationship. Vandenhook, 855 P.2d at 520-21.

In this case, it is undisputed that Campbell and Southern have cohabited since 2002, except for two short periods of time. Campbell and Southern testified that, prior to their official marriage, she was listed on his health insurance, he was a beneficiary on her life insurance policy, she had a card from the Elks club as his wife, and he would sometimes introduce her to others as his wife. On the other hand, they asserted they were single for income tax and student loan purposes because it benefitted them financially. This evidence presents disputed factual issues so as to require a determination from the factfinder. The Court finds that genuine issues of material fact exist as to whether Campbell and Southern confirmed their marriage by public repute.

## IV.  CONCLUSION

The Court has considered the entire record, the Defendants' motions, and the Plaintiffs' response. The Court finds that genuine issues of material fact exist as to whether Campbell and Southern were common law husband and wife at the time of the accident on November 5, 2008. Accordingly, Berthold Farmers' Elevator LLC's Motion for Partial Summary Judgment (Docket No. 55) and the "Motion and Joinder of Roland S. Pederson and KC Transport, LLC, in Berthold Farmers Elevator's Motion for Partial Summary Judgment" (Docket No. 65) are **DENIED**.

**IT IS SO ORDERED.**

Dated this 2nd day of December, 2010.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court

9