**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Robert C. Campbell and Brenda Southern, individually as husband and wife, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| BNSF Railway Company, a Delaware corporation; Roland S. Pederson; KC Transport, LLC, a Montana corporation; and Berthold Farmers' Elevator LLC, a North Dakota corporation, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING IN PART AND DENYING IN PART BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Case No. 4:09-cv-49

_____

Before the Court is Defendant BNSF Railway Company's motion for summary judgment filed on November 11, 2010. See Docket No. 73. Defendant Berthold Farmers' Elevator LLC filed a response in opposition to the motion on December 2, 2010. See Docket No. 84. Defendants KC Transport, LLC and Roland S. Pederson filed a response in opposition to the motion on December 8, 2010. See Docket No. 91. The Plaintiffs filed a response in opposition to the motion on December 8, 2010. See Docket No. 97. BNSF Railway Company filed a reply to Berthold Farmers' Elevator's response on December 16, 2010. See Docket No. 100. BNSF Railway Company filed replies to KC Transport, LLC, Roland S. Pederson, and the Plaintiffs' responses on December 22, 2010. See Docket Nos. 102 and 104. Berthold Farmers' Elevator filed a brief in response to KC Transport, LLC and Roland S. Pederson's response on December 22, 2010. See Docket No. 108. Oral argument on the motion was held in Minot, North Dakota on January 20, 2011. For the reasons stated below, the Court grants in part and denies in part BNSF's motion.

**I.      BACKGROUND**

On November 5, 2008, Plaintiff Robert C. Campbell was working as a conductor for BNSF Railway Company ("BNSF").  Campbell was operating a train headed westbound near the City of Berthold, North Dakota.  The train approached a crossing near Berthold known as the "cemetery crossing."  There are four tracks at the cemetery crossing.  The two southernmost tracks are used by Berthold Farmers' Elevator ("the Elevator"), and are referred to as "industry track."   The third track is the mainline track, used by BNSF and Amtrak.  The northernmost track is used only when trains need to pass each other.  Campbell's train was using the mainline track.  The Elevator had placed empty railcars on the industry track at an unknown distance from the cemetery crossing.  As the train approached the cemetery crossing, a tractor trailer owned by KC Transport, LLC ("KC Transport") and operated by Roland S. Pederson drove onto the tracks.  The train collided with the back end of the tractor trailer.  Campbell suffered injuries as a result of the collision.

On October 5, 1999, BNSF and the Elevator entered into a "Lease of Land for Construction/Rehabilitation of Track" ("Land Lease") by which the Elevator leased land from BNSF to build two tracks.  See Docket No. 23-1.  The Land Lease includes the following provision:

> 8.    (a)    Except as set forth in Section 8 (b), Lessee shall indemnify and hold harmless Lessor for all losses, damages, injuries or death to any person, as well as expenses, and claims under the Federal Employers' Liability Act, or any applicable safety act, (45 U.S.C. 51 et. seq.), arising in any manner out of the failure of Lessee to take any action required by this Lease, the condition of the Premises or any equipment or improvements thereon, or any act or omission of Lessee, its employees, agents, contractors or invitees ("Lessee's Parties"), regardless of whether such loss, damage, injury, death or expense is caused or contributed to by the negligence or alleged negligence of Lessor, except to the extent any such loss, damage, injury or death to any person, or expense is proximately caused by Lessor's gross negligence or intentional misconduct.

See Docket No. 23-1.

On April 4, 2000, BNSF and the Elevator entered into an "Industry Track Agreement," allowing the Elevator to use the two southernmost tracks near the cemetery crossing. See Docket No. 23-2. The Industry Track Agreement includes the following provisions:

> Section 3.(g)  Industry's use of the Track for the purpose of intraplant switching of railroad cars with an on-track unit, hereinafter called "Trackmobile", shall be subject to the following terms and conditions:
>
> . . . .
>
> Industry further agrees to indemnify and hold Railroad harmless from any and all loss, damage, injury or death alleged to have been caused or contributed to by reason of Industry's movement over road crossings or the mere presence of freight cars or Industry's Trackmobile at or near road crossings of the Track.
>
> . . . .
>
> Section 9.(a)  Industry shall indemnify and save harmless Railroad from any and all claims, demands, suits, losses, judgments, costs, damages, or expenses on account of injuries to or death of any and all persons whomsoever, and any and all loss or destruction of or damage to property to whomsoever belonging, including property owned by, leased or rented to, or in the care, custody or control of the parties hereto, arising or growing out of or in any manner connected with the maintenance, operation, and use of the Track and crossing covered by this Agreement, or caused or occasioned, in whole or in part, by reason of or arising during the presence of the person of Industry, its subcontractors, the employees or agents of either, or third parties upon or in proximity to the Track covered by this Agreement. If any claim or liability shall arise from the joint or concurring negligence of the parties hereto, it shall be borne by them in proportion to the degree of fault or negligence of both of them as provided by law.

See Docket No. 23-2.

Rule 6.32.4 of BNSF's General Code of Operating Rules states, "Leave cars, engines, or equipment clear of road crossings and crossing signal circuits. When practical, avoid leaving cars,

engines, or equipment standing closer than 250 feet from the road crossing when there is an adjacent track." See Docket No. 75-6.

On June 21, 1999, Michele S. Keller, BNSF's Manager of Industrial Development, wrote a letter to Dan DeRouchy, Manager of the Elevator, regarding a proposed expansion of the Elevator. The letter states, in part:

> Under your current agreement, your elevator has had the permission of the Berthold City Council to close the crossing next to your load-out for a period of up to 10 hours. Your proposed expansion will affect not only this crossing but also the crossing to the west.
>
> For this proposal to receive approval as presented, both crossings should be permanently closed. If that is not feasible, you will need to secure City Council approval to close the crossing next to your load-out for 15 hours. This corresponds to the number of hours you will have to load the shuttle trains. You must secure permission from the governing authority (county, township, etc.) for the western crossing to be closed for the time the train is on site. . . . This crossing could be closed for up to 20 hours and maybe more.
>
> In the event this is not a practical solution, then <u>your plan must allow for visual clearance of 250' on either side of this crossing during loading</u>. . . .

See Docket No. 75-7 (emphasis added).

On October 18, 2000, Cheri Bonebrake, BNSF's Grade Crossing Coordinator, wrote a letter to DeRouchy, stating in part:

> This letter is in response to our telephone conversation with Ms. Michele Keller, Industrial Development on October 16, 2000, regarding the Main Street and 296th Street ("Cemetery") grade crossing in Berthold, North Dakota.
>
> On behalf of Ms. Keller, I would like to reinforce an item covered in BNSF's letter agreement with the Berthold Farmers Elevator dated June 21, 1999 which mandates <u>a visual clearance of 250 feet</u> on either side of the above-mentioned crossings. As we discussed, the Elevator is not presently complying with this setback requirement.

See Docket No. 75-7 (emphasis in original).

4

On December 1, 2000, Gary Springer, the Elevator's Safety Director, wrote a letter to Rob Roy, BNSF's Director of Grade Crossing Safety, asserting the Elevator was in compliance with the 250-foot clearance requirement.  See Docket No. 75-8.

On January 25, 2010, Campbell and Brenda Southern filed an amended complaint in which Campbell asserts two claims against BNSF.  In count one, Campbell alleges he was injured as a result of BNSF's negligence in violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60.  See Docket No. 19.  In count two, Campbell alleges he was injured as a result of BNSF's violation of the Locomotive Inspection Act, 49 U.S.C. § 20701.  See Docket No. 19.

On February 8, 2010, BNSF filed a crossclaim against the Elevator for indemnification.  See Docket No. 23.  On February 24, 2010, the Elevator filed a crossclaim for contribution or indemnity against BNSF, KC Transport, and Pederson.  See Docket No. 29.  On February 26, 2010, KC Transport filed a crossclaim against BNSF and the Elevator for damage caused to its tractor trailer.  See Docket No. 38.

On November 11, 2010, BNSF filed a motion for summary judgment seeking:

    1.    Judgment of Dismissal of Count Two of the Amended Complaint of Plaintiff Robert C. Campbell ("Campbell") alleging BNSF's violation of the Locomotive Inspection Act ("LIA");

    2.    Judgment of Dismissal of Count One of Campbell's Amended Complaint for damages under the Federal Employee Liability Act ("FELA");

    3.    Judgment in favor of BNSF on its Crossclaim against Berthold Farmers Elevator LLC ("Berthold Elevator") for indemnity and a defense;

    4.    Judgment of Dismissal of Berthold Elevator's Crossclaim against BNSF; and

    5.    Judgment of Dismissal of the Crossclaim of KC Transport, LLC ("KC Transport") against BNSF.

See Docket No. 73.

The Plaintiffs do not oppose BNSF's motion for summary judgment regarding count two of the complaint which relates to claims under the Locomotive Inspection Act. See Docket No. 97. As to count one of the complaint, BNSF contends that Campbell has no claim under FELA that the train was not crashworthy or that BNSF failed to provide him with adequate emergency procedure training. BNSF also contends it cannot be held liable for the Elevator's placement of railcars near the cemetery crossing. The Plaintiffs contend there are genuine issues of material fact as to whether BNSF breached a non-delegable duty to provide Campbell with a safe place to work.

As to BNSF's crossclaim against the Elevator, BNSF argues it is entitled to indemnification from the Elevator under the Land Lease and Industry Track Agreements because Campbell was injured as a result of the Elevator's placement of railcars near the cemetery crossing. The Elevator contends the indemnity agreements with BNSF are void under N.D.C.C. § 49-16-01.1.

As to the Elevator's crossclaim against BNSF, BNSF contends the indemnity agreements with the Elevator preclude the Elevator's crossclaim for indemnification, and that N.D.C.C. § 32-03.2-02 precludes the Elevator's crossclaim for contribution. The Elevator has failed to address BNSF's motion as to the Elevator's crossclaim. See Docket No. 84.

As to KC Transport's crossclaim against BNSF, BNSF contends there is no factual basis upon which to claim BNSF was negligent or is liable for the Elevator's negligence in placing railcars near the cemetery crossing. KC Transport contends there are genuine issues of material fact as to whether BNSF's negligence was a cause of the collision.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## III.    LEGAL DISCUSSION

### A.     CAMPBELL'S LOCOMOTIVE INSPECTION ACT CLAIM

In their response to BNSF's motion, the Plaintiffs state, "Plaintiffs do not oppose BNSF's motion for summary judgment with respect to the LIA claim." See Docket No. 97. Accordingly, BNSF's motion is granted as to count two of the Plaintiffs' complaint.

**B.     CAMPBELL'S FELA CLAIMS**

This Court has explained previously:

> The Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et. seq., was enacted in the 1930's. FELA provides a cause of action to railroad employees for injuries "resulting in whole or in part from the negligence of [the railroad] . . . or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, . . . or other equipment." 45 U.S.C. § 51. The Eighth Circuit has recognized that Congress intended FELA to be a broad statute designed to be liberally interpreted to fulfill the intent of Congress. Hane v. Nat'l R.R. Passenger Corp., 110 F.3d 573, 574 (8th Cir. 1997). FELA is a remedial statute grounded in negligence although the statute does not define negligence. To prevail on a FELA claim, a plaintiff must generally prove the traditional common law components of negligence which include duty, breach of duty, causation, injury, and damages. Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990). This includes showing whether the railroad failed to use reasonable or ordinary care under the circumstances. Davis v. Burlington Northern, Inc., 541 F.2d 182, 185 (8th Cir. 1976). The plaintiff's burden of proof in a FELA action is significantly lighter than it would be in an ordinary negligence case. In a FELA action, the railroad is liable if its negligence played any part, even the slightest, in producing the injury. Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506, 77 S. Ct. 443, 1 L. Ed. 2d 493 (1957).

Magelky v. BNSF Ry. Co., 579 F. Supp. 2d 1299, 1304 (D.N.D. 2008).

The United States Supreme Court has said that trial by jury is "part of the remedy" in cases brought under FELA. Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 360 (1962). Certain duties have become "integral parts" of FELA, including "the duty to provide a reasonably safe place to work," "the duty to promulgate and enforce safety rules," and "the duty to warn employees of unsafe working conditions." Ackley v. Chicago & N.W. Transp. Co., 820 F.2d 263, 266 n.5 (8th Cir. 1987) (citing Bailey v. Cent. Vt. Ry., Inc., 319 U.S. 350, 352-53 (1943); Ybarra v. Burlington N., Inc., 689 F.2d 147, 150 (8th Cir. 1982); Ragsdell v. S. Pac. Transp., 688 F.2d 1281, 1283 (9th Cir. 1982); Terminal R.R. Ass'n v. Howell, 165 F.2d 135, 139 (8th Cir. 1948)). Case law in the Eighth Circuit has established that FELA provides that the employer's duties are non-delegable and become more imperative as the risk to the employee increases. Id. at 267 (citing

Bailey, 319 U.S. at 352-53).  The United States Supreme Court has held that the duty to provide a safe place to work applies "even when they are required to go onto the premises of a third party over which the railroad has no control."  Shenker v. Baltimore & Ohio R.R. Co., 374 U.S. 1, 7 (1963).

In their complaint, the Plaintiffs allege BNSF committed the following acts of negligence:

(A)     Negligence in the inspection, care and maintenance of its railroad crossing and tracks;

(B)     Negligence in failing to warn Plaintiff Robert C. Campbell of the unsafe hazards and conditions which existed on its tracks and crossing;

(C)     Negligence in failing to establish a safe and proper distance to locate its railcars parked at or near the rail crossing, in light of the unsafe hazards and conditions in the area, and thereby creating a dangerous and hazardous crossing obstructed by railcars;

(D)     Negligence in failing to provide Plaintiff Robert C. Campbell with a reasonably safe place in which to work, including a reasonably safe railroad crossing to traverse;

(E)     Negligence in failing to create, establish, publish and enforce reasonably safe procedures, policies and instructions which could have prevented the collision;

(F)     Negligence in failing to devise an adequate safety program which could have prevented the collision;

(G)     Negligence in failing to provide locomotive engines and railroad equipment sufficiently tested and properly designed to meet reasonable crashworthiness standards;

(H)     Negligence in failing to provide emergency procedure training in crash conditions to avoid or limit damage and injury;

(I)     Negligence in assigning Plaintiff Robert C. Campbell to work on its train on tracks and at a crossing that were unsafe and dangerous; and

(J)     Such other acts of negligence as may be discovered and shown.

See Docket No. 19.

The correspondence exchanged between BNSF and the Elevator in 1999 and 2000 reveals that BNSF was aware that the 250-foot clearance rule was not being complied with at the cemetery crossing. Cheri Bonebrake's deposition testimony reveals that BNSF did not take further efforts to ensure the Elevator was complying with the 250-foot clearance rule:

> Q. . . . What was done by BNSF to make sure that the elevator was complying with the 250-foot rule after the year 2001?
>
> . . . .
>
> THE WITNESS: Nothing.
>
> Q. . . . So basically this issue from 2001 to the time of this accident in November of 2008 was left solely up to the elevator to comply with the 250-foot rule; is that correct?
>
> A. As far as I know, yes.
>
> Q. Were there ever any attempts by you as the coordinator of field safety and support to check on the elevator to see if they were complying with the 250-foot rule?
>
> A. No.
>
> Q. Why not?
>
> A. That's not part of our responsibility.
>
> Q. Not your responsibility; is that right?
>
> A. That's correct.
>
> Q. However, your prior experience with the elevator in 1999, 2000 and 2001 had not been good about their complying with the 250-foot rule; would I be correct?
>
> . . . .
>
> A. Yes.
>
> . . . .

> Q. . . . So they had a history, as far as you were concerned, about not complying with the 250-foot rule at this crossing?
>
> . . . .
>
> THE WITNESS: Yes.

See Docket No. 75-9.

The testimony of David Kastet, the engineer who was operating the train with Campbell, reveals that he was not warned by BNSF to watch for the positioning of railcars near crossings:

> Q. And you've never received – I just want to be clear on this. You've never received any instructions or special orders, general orders or directives to pay particular attention to the positioning of railcars at elevators as you cross by them relative to their position at crossings and whether they're set back the appropriate distance?
>
> . . . .
>
> THE WITNESS: No, sir.
>
> Q. . . . Just so I'm clear, the trainmasters then or anybody from management never instructed you in the event that you observe railcars that are not set back the required 250 feet from a crossing, that you need to report that to the railroad?
>
> . . . .
>
> THE WITNESS: No.
>
> . . . .
>
> Q. . . . Do you get any information, either written or orally, from your superiors at Burlington Northern about any specific conditions that you are to watch for at any given crossing, for example?
>
> . . . .
>
> THE WITNESS: We get they call it track condition messages, which is TCMs they call them, and if there's anything out of the – unusual, they put that in there and we're supposed to read it as a – it's kind of like our bible as far as knowing if there's anything hazardous or something to be aware of.

> Q.   . . . How often do you get those, and what do you call them again?
>
> A.   Track condition messages, and we get them every trip.
>
> Q.   And in terms of the track condition messages, do those sometimes talk about things to watch for at various crossings, that is, where the public drives their vehicle across?
>
> . . . .
>
> THE WITNESS:   Not that I'm aware of, no.
>
> Q.   . . . Okay. And how about any particular crossing that may have some – may require particular attention for you as an engineer to watch out for motorists that might be crossing, do you get any information, either orally or written, on that?
>
> A.   No, sir.
>
> . . . .
>
> Q.   . . . And from what you told Mr. LeNeave just now during his questioning, you over the course of the years you have been engineer on this route since 1991 had never received any particular information about any particular condition to watch for at the crossing where this accident happened; is that correct?
>
> A.   Yeah. Yes.

See Docket No. 92-7.

The evidence described above, and other evidence in the record before the Court, creates genuine issues of material fact as to whether BNSF breached a general duty to provide Campbell a reasonably safe place to work, enforce safety rules, and warn him of unsafe working conditions. See Ackley, 820 F.2d at 266, n.5. The evidence of "fault" or negligence against BNSF is arguably weak and causation is suspect, but the Plaintiff's burden of proof in a FELA action is significantly lighter than it would be in an ordinary negligence case. The Elevator may be primarily responsible for the placement of railcars near the cemetery crossing, but that may not completely relieve BNSF

of its broad and general duties under FELA. Accordingly, BNSF's motion for summary judgment as to count one of the Plaintiffs' complaint concerning the FELA claim is denied.

### C. BNSF'S CROSSCLAIM AGAINST THE ELEVATOR

As the Court explained in its Order filed on December 21, 2010, "Indemnification is a remedy which allows a party to recover reimbursement from another for the discharge of a liability which, as between them, should have been discharged by the other." See Docket No. 101 (quoting Mann v. Zabolotny, 2000 ND 160, ¶ 7, 615 N.W.2d 526). BNSF contends that paragraph 8(a) of the Land Lease and sections 3(g) and 9(a) of the Industry Track Agreement require the Elevator to indemnify BNSF and provide a defense. The Elevator argues that the indemnity agreements are rendered void by Section 49-16-01.1 of the North Dakota Century Code. The Court notes that Section 49-16-01.1 became effective on August 1, 2003, and only applies to leases and other agreements or renewals of agreements entered into after August 1, 2003. It is undisputed that the Land Lease was entered into on October 5, 1999, and the Industry Track Agreement was executed on April 4, 2000. See Docket Nos. 23-1 and 23-2. The Court finds as a matter of law that N.D.C.C. § 49-16-01.1 does not apply to the Lease Agreement or the Industry Track Agreement at issue in this litigation.

> Paragraph 8(a) of the Land Lease provides:
>
> Except as set forth in Section 8 (b), Lessee shall indemnify and hold harmless Lessor for all losses, damages, injuries or death to any person, as well as expenses, and claims under the Federal Employers' Liability Act, or any applicable safety act, (45 U.S.C. 51 et. seq.), arising in any manner out of the failure of Lessee to take any action required by this Lease, the condition of the Premises or any equipment or improvements thereon, or any act or omission of Lessee, its employees, agents, contractors or invitees ("Lessee's Parties"), regardless of whether such loss, damage, injury, death or expense is caused or contributed to by the negligence or alleged

>negligence of Lessor, except to the extent any such loss, damage, injury or death to any person, or expense is proximately caused by Lessor's gross negligence or intentional misconduct.

See Docket No. 23-1. Paragraph 8(a) requires the Elevator to indemnify BNSF (the Lessor) for any damages, expenses, and claims under FELA, or any applicable safety act, arising out of any act or omission of the Elevator (the Lessee). The indemnfication is complete unless caused by BNSF's gross negligence or intentional misconduct. Counsel for the Elevator acknowledged at the oral arguments that there is no claim being asserted that BNSF was grossly negligent or engaged in intentional misconduct. Therefore, BNSF is entitled to judgment as a matter of law on its crossclaim against the Elevator based on the indemnification clause contained in paragraph 8(a) of the Land Lease.

The Industry Track Agreement also contains indemnification clauses which require the Elevator to indemnify BNSF for damages arising out of the Elevator's track activities. Section 3(g) of the Industry Track Agreement provides in part as follows:

>Section 3.(g)   Industry's use of the Track for the purpose of intraplant switching of railroad cars with an on-track unit, hereinafter called "Trackmobile", shall be subject to the following terms and conditions:
>
>. . . .
>
>Industry further agrees to indemnify and hold Railroad harmless from any and all loss, damage, injury or death alleged to have been caused or contributed to by reason of Industry's movement over road crossings or the mere presence of freight cars or Industry's Trackmobile at or near road crossings of the Track.

See Docket No. 23-2. Thus, section 3(g) specifically requires the Elevator to indemnify BNSF for, among other things, claims related to the "mere presence" of freight cars upon or in close proximity to the crossing where the accident occurred.

Section 9(a) of the Industry Track Agreement also requires the Elevator to indemnify BNSF against claims arising out of the Elevator's use of the track and proximity to BNSF's track. Section 9(a) provides as follows:

> Section 9.(a) Industry shall indemnify and save harmless Railroad from any and all claims, demands, suits, losses, judgments, costs, damages, or expenses on account of injuries to or death of any and all persons whomsoever, and any and all loss or destruction of or damage to property to whomsoever belonging, including property owned by, leased or rented to, or in the care, custody or control of the parties hereto, arising or growing out of or in any manner connected with the maintenance, operation, and use of the Track and crossing covered by this Agreement, or caused or occasioned, in whole or in part, by reason of or arising during the presence of the person of Industry, its subcontractors, the employees or agents of either, or third parties upon or in proximity to the Track covered by this Agreement. If any claim or liability shall arise from the joint or concurring negligence of the parties hereto, it shall be borne by them in proportion to the degree of fault or negligence of both of them as provided by law.

See Docket No. 23-2.

Further, Section 10(e) of the Industry Track Agrement provides that upon written notice, the Elevator agrees to assume the defense of any lawsuit brought against BNSF for which the Elevator had a duty of indemnification. Section 10(e) provides:

> Upon written notice from Railroad, Industry agrees to assume the defense of any lawsuit or other proceeding brought against Railroad by any entity, relating to any amtter covered by this Agreement for which Industry has an obligation to assume liability for and/or save and hold harmless Railroad. Industry shall pay all costs incident to such defense, including, but not limited to, attorney's fees, investigators' fees, litigation expenses, settlement payments, and amounts paid in satisfaction of judgments.

See Docket No. 23-2. On October 21, 2009, BNSF sought indemnification and tendered the defense of this lawsuit to the Elevator and its insured. The Elevator has neither acknowledged its responsibility to indemnify nor assumed defense of this lawsuit against BNSF.

15

The Court finds that Section 3(g) of the Industry Track Agreement requires the Elevator to indemnify BNSF for any loss, damage, or injury caused or contributed to by the "mere presence of freight cars" on the industry track at or near the crossing. The evidence in the record before the Court reveals that Campbell's injuries and the damage to KC Transport's truck arguably result, at least in part, from the presence of railcars placed by the Elevator on the industry track near the crossing. The Court finds as a matter of law that section 3(g) of the Industry Track Agreement requires the Elevator to indemnify BNSF.

The Court further finds that Section 9(a) of the Industry Track Agreement requires the Elevator to indemnify BNSF for "any and all claims, demands, suits, losses, judgments, costs, damages, or expenses on account of" injuries or property damage "arising out of or in any manner connected with the maintenance, operation, and use of the Track and crossing covered by this Agreement." See Docket No. 23-2. The evidence before the Court reveals that the alleged injuries and property damage that resulted from this accident were arguably connected with the Elevator's operation and use of the industry track.

The Elevator contends that the final sentence of Section 9(a) precludes indemnity because the jury may find BNSF jointly or concurrently negligent. However, the Eighth Circuit has interpreted similar phrases in railroad indemnity contracts to refer only to fault on the part of the railroad that is "serious and distinct from that of the industry." Burlington N., Inc. v. Hughes Bros, Inc., 671 F.2d 279, 285 (8th Cir. 1981) (citing Mo. Pac. R.R. Co. v. Winburn Tile Mfg. Co., 461 F.2d 984, 989 (8th Cir. 1972)); see also Mo. Pac. R.R. Co. v. Int'l Paper Co., 618 F.2d 492, 497 (8th Cir. 1981) (holding that the industry was required to fully indemnify the railroad because the

railroad had no fault separate from that of the industry). The Court finds as a matter of law that Section 9(a) of the Industry Track Agreement requires the Elevator to indemnify BNSF.

There is no jury question on the issue of indemnity. BNSF is entitled to complete indemnification and a defense to this action in accordance with the terms of paragraph 8(a) of the Land Lease agreement and sections 3(g), 9(a), and 10(e) of the Industry Track Agreement. BNSF is entitled to judgment as a matter of law on its crossclaim against the Elevator.

### D.     THE ELEVATOR'S CROSSCLAIM AGAINST BNSF

In its response to BNSF's motion, the Elevator addressed BNSF's request for summary judgment as to BNSF's crossclaim for indemnity and a defense, but failed to address BNSF's request that the Elevator's crossclaim be dismissed. Local Civil Rule 7.1(F) states:

> A party's failure to serve and file a memorandum or a response within the prescribed time may subject a motion to summary ruling. A moving party's failure to serve and file a memorandum in support may be deemed an admission that the motion is without merit. <u>An adverse party's failure to serve and file a response to a motion may be deemed an admission that the motion is well taken</u>.

D.N.D. Civ. L. R. 7.1(F) (emphasis added). The Court considers the Elevator's failure to respond to BNSF's motion to dismiss the Elevator's crossclaim as an admission that the motion is well-taken. Accordingly, BNSF's motion is granted as to the Elevator's crossclaim.

### E.     KC TRANSPORT'S CROSSCLAIM AGAINST BNSF

On February 26, 2010, KC Transport filed a crossclaim against BNSF and the Elevator for physical damage to its truck and lost profits as a result of the accident. <u>See</u> Docket No. 38. BNSF contends that the only theory upon which it can be liable to KC Transport for damage to the tractor

trailer is vicarious liability for the Elevator's negligence in leaving railcars near the cemetery crossing. KC Transport contends that BNSF's negligence contributed to the tractor trailer's damage. KC Transport points to Paragraph 4(b) of the Land Lease which provides:

> 4. (b) In connection with Lessee's use of the Premises for the purpose identified in Section 3 (a) above, Lessor in its sole judgment may require for safety purposes that a Flagman be provided on the Premises during Lessee's use of the Premises. In this connection, Lessee agrees to reimburse Lessor (within thirty (30) days after receipt of written advice from Lessor) for all cost and expense by Lessor, including but not limited to the furnishing of Lessor's Flagman ($500.00 per eight hour day, ($95.00 per hour thereafter), as Lessor deems necessary.

See Docket No. 23-1. The factual basis for KC Transport's crossclaim against BNSF is the railroad's alleged responsibility for the placement of the railcars near the crossing. The Court finds that there are arguably some limited genuine issues of material fact in dispute concerning KC Transport's crossclaim against BNSF. As such, BNSF's motion to dismiss KC Transport's crossclaim is denied at this stage of the litigation.

## IV. CONCLUSION

The Court has considered the entire record, BNSF's motion, and the parties' responses. BNSF's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

BNSF's motion to dismiss the FELA claims set forth in count one of the Plaintiffs' complaint is **DENIED**;

BNSF's motion to dismiss the Locomotive Inspection Act claims set forth in count two of the Plaintiffs' complaint is **GRANTED**;

BNSF's crossclaim against the Elevator for indemnification is **GRANTED**;

BNSF's motion to dismiss the Elevator's crossclaim against BNSF is **GRANTED**;

BNSF's motion to dismiss KC Transport's crossclaim against BNSF is **DENIED**.

The following claims and crossclaims remain in this litigation:

Count one (FELA claims) of the Plaintiffs' complaint against BNSF

Count three of the Plaintiffs' complaint against KC Transport

Count four of the Plaintiffs' complaint against Pederson

Count five of the Plaintiffs' complaint against the Elevator

BNSF's crossclaim against KC Transport and Pederson

KC Transport's crossclaims against the Elevator and BNSF

**IT IS SO ORDERED.**

Dated this 24th day of January, 2011.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court