**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Robert C. Campbell and Brenda Southern, individually as husband and wife, | ) ) | **ORDER GRANTING IN PART AND DENYING IN PART BNSF RAILWAY COMPANY'S MOTION IN LIMINE DATED JANUARY 31, 2011** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| BNSF Railway Company, a Delaware corporation; Roland S. Pederson; KC Transport, LLC, a Montana corporation; and Berthold Farmers' Elevator LLC, a North Dakota corporation, | ) ) ) ) ) ) | Case No. 4:09-cv-49 |
| Defendants. | ) | |

___

Before the Court is Defendant BNSF Railway Company ("BNSF")'s "Motion in Limine dated January 31, 2011." See Docket No. 111. The Plaintiffs filed a response on February 4, 2011. See Docket No. 127. BNSF filed a reply brief on February 8, 2011. See Docket No. 128. Defendants Roland S. Pederson and KC Transport, LLC ("KC Transport") filed a response on February 11, 2011. See Docket No. 135. BNSF filed a reply brief on February 17, 2011. See Docket No. 154. Defendant Berthold Farmer's Elevator ("the Elevator") did not file a response.

**I.   LEGAL DISCUSSION**

On January 31, 2011, BNSF filed a motion in limine requesting the following:

I.   No party should be allowed to argue or present evidence that this lawsuit is Campbell's sole remedy against BNSF or that Campbell is ineligible for worker's compensation.

II.   No party should be entitled to argue or present evidence that BNSF's General Code of Operating Rules establish a standard of care.

   III. KC Transport should not be allowed to argue or present evidence that BNSF had a duty to slow the train.

   IV. Neither Campbell nor KC Transport should be allowed to argue or introduce evidence that the crossing was hazardous and that BNSF had an obligation to modify or close the crossing or provide additional warning devices.

   V. Any argument or evidence that BNSF has attempted to close this crossing should not be presented to the jury as not relevant and unduly prejudicial.

See Docket No. 111.

### A. CAMPBELL'S SOLE REMEDY AND WORKER'S COMPENSATION

BNSF contends that "it would unfairly prejudice the jury in favor of the plaintiff and against the railroad if it was allowed to consider plaintiff's ineligibility for worker's compensation benefits." See Docket No. 112. Pederson and KC Transport join in BNSF's motion. See Docket No. 135. The Plaintiffs contend, "Dispelling all notions that Campbell might be covered under some other statute is especially important since the jury may believe that Campbell is attempting to achieve a double recovery under both FELA and state workers' compensation statute." See Docket No. 127.

The Court ruled on a similar motion in Magelky v. BNSF Ry. Co., No. 1:06-cv-025, 2008 U.S. Dist. LEXIS 6573 (D.N.D. Jan. 28, 2008) ("Magelky I"). The Plaintiff requested that the jury be instructed that she was not eligible for worker's compensation and that her sole source of recovery was a lawsuit under FELA. Magelky I, at *20. The Court denied the Plaintiff's motion citing Schmitz v. Canadian Pac. Ry. Co., 454 F.3d 678 (7th Cir. 2006) and Stillman v. Norfolk & W. Ry. Co., 811 F.2d 834 (4th Cir. 1987). In Schmitz, the Court held that such evidence was properly excluded. Schmitz, 454 F.3d at 685. In Stillman, the Court held that such evidence would prejudice the railroad. Stillman, 811 F.2d at 838. Accordingly, BNSF's motion to exclude evidence

2

that Campbell is not eligible for worker's compensation benefits or that this lawsuit is his sole remedy is **GRANTED**. No party will be permitted at trial to argue to the jury that Campbell is not covered by worker's compensation or that Campbell's sole source of recovery is the FELA claim in this lawsuit.

### B.     BNSF'S GENERAL CODE OF OPERATING RULES

BNSF seeks to exclude evidence that its general code of operating rules establish a standard of care. Pederson and KC Transport join in BNSF's motion. The Plaintiffs contend that under FELA, a railroad is required to establish and enforce reasonable rules and standards. Therefore, BNSF's alleged failure to enforce its rules can be considered evidence of negligence.

The Court considered a similar motion in Magelky v. BNSF Ry. Co., No. 1:06-cv-025, 2008 U.S. Dist. LEXIS 6703 (D.N.D. Jan. 29, 2008) ("Magelky II"). BNSF sought to exclude evidence that its general code of operating rules established a standard of care. Magelky II, at *14. The Court granted BNSF's motion, citing Gagnier v. Bendixen, 439 F.2d 57 (8th Cir. 1971). In Gagnier, the Eighth Circuit Court of Appeals concluded that "[n]egligence is to be measured by the legal obligation to use due care under the circumstances existing at the time of the accident" and not the railroad's private practices. Gagnier, 439 F.2d at 62. The Court also cited Ard v. Metro-North R. Co., 492 F. Supp. 2d 95 (D. Conn. 2007), in which the District Court for the District of Connecticut held that the railroad's internal rules did not establish legal standards. Ard, 492 F. Supp. 2d at 99. BNSF's motion to exclude evidence that its general code of operating rules establish a standard of care is **GRANTED**.

### C. BNSF'S DUTY TO SLOW THE TRAIN

BNSF seeks to preclude KC Transport from introducing evidence that BNSF was negligent for failing to slow the train. The Plaintiffs do not object to BNSF's motion. See Docket No. 127. KC Transport responds:

> Unless the engineer, Mr. Kastet, testifies that he could have avoided the accident, there will be no evidence that reducing the speed of the train would have avoided the accident. In other words, none of the parties have produced an expert to testify that reducing the speed of the train would have avoided the accident. Pederson and KC Transport do not intend to offer any testimony from its trucking expert, Donald Asa, that the train crew should have reduced its speed and thereby could have avoided the accident.

See Docket No. 135. BNSF's motion to preclude KC Transport from introducing evidence that BNSF was negligent for failing to slow the train is **GRANTED**.

### D. WARNING DEVICES

BNSF seeks to preclude the Plaintiffs and KC Transport from introducing evidence that "BNSF has violated any duty to provide a safe crossing, or that the crossing was extra-hazardous, or that the crossing should have been closed or modified in any way, or that additional warning devices should have been provided like flagmen or active warning devices." See Docket No. 112. BNSF contends that such evidence is precluded by N.D.C.C. § 24-09-01.1 and federal law. The Plaintiffs oppose BNSF's motion and argue that FELA places a duty on BNSF to provide Campbell with a reasonably safe place to work. KC Transport and Pederson join in the Plaintiffs' opposition. KC Transport and Pederson concede that they will not argue that "BNSF had a duty to install any additional bells, whistles, gates, lights, etc., at this crossing." See Docket No. 135. However, KC Transport and Pederson contend that BNSF failed to "guard against obstructing the view of

4

oncoming trains at this crossing" and that "the parties foresaw that the use of flagmen 'for safety purposes' was the procedure to be used to protect motorists if it became necessary to park cars close to the crossing during loading activities." See Docket No. 135.

In the Court's summary judgment order, the Court explained:

> The . . . evidence in the record before the Court, creates genuine issues of material fact as to whether BNSF breached a general duty to provide Campbell a reasonably safe place to work, enforce safety rules, and warn him of unsafe working conditions. See [Ackley v. Chicago & N.W. Transp. Co., 820 F.2d 263, 266 n.5 (8th Cir. 1987)]. The evidence of "fault" or negligence against BNSF is arguably weak and causation is suspect, but the Plaintiff's burden of proof in a FELA action is significantly lighter than it would be in an ordinary negligence case. The Elevator may be primarily responsible for the placement of railcars near the cemetery crossing, but that may not completely relieve BNSF of its broad and general duties under FELA.

See Docket No. 110, pp. 12-13. Evidence related to BNSF's general duties under FELA is relevant and admissible. The adequacy of the warning devices at the crossroad are controlled by state law and evidence that the devices were inadequate will be excluded. However, evidence that BNSF breached its general duties under FELA with regard to the distance railcars were parked from the crossing will be admissible at trial.

Paragraph 4(b) of the land lease between BNSF and the Elevator specifically provides as follows:

> In connection with Lessee's use of the Premises for the purpose identified in Section 3 (a) above, Lessor in its sole judgment may require for safety purposes that a Flagman be provided on the Premises during Lessee's use of the Premises. In this connection, Lessee agrees to reimburse Lessor (within thirty (30) days after receipt of written advice from Lessor) for all cost and expense by Lessor, including but not limited to the furnishing of Lessor's Flagman ($500.00 per eight hour day, ($95.00 per hour thereafter), as Lessor deems necessary.

See Docket No. 23-1. This was a contractual obligation between BNSF and the Elevator. Under the terms of the land lease, BNSF could have arguably required the Elevator to use a flagman.

5

Whether that was reasonable or practical under the circumstances is ultimately for the jury to decide based on all the evidence presented. The use of a flagman is neither addressed in N.D.C.C. ch. 24-09 nor does it appear to be addressed under federal law. Accordingly, evidence that a flagman was not used at the crossing may be admissible at trial. Therefore, BNSF's motion as to warning devices is **GRANTED IN PART AND DENIED IN PART**.

### E.   CLOSURE OF THE CROSSING

BNSF seeks to exclude any evidence that it attempted to close the "cemetery crossing." BNSF contends that it does not have the authority to unilaterally close a crossing and that its attempt to close the crossing in 1999-2000 is irrelevant. The Plaintiffs argue that evidence related to the attempted closure of the crossing in 1999-2000 is relevant to BNSF's knowledge that the crossing was hazardous. Pederson and KC Transport join in the Plaintiffs' opposition to BNSF's motion.

N.D.C.C. § 24-09-10 sets forth the procedure to close a railroad crossing:

> It is in the interest of public safety to eliminate unnecessary railroad grade crossings whenever reasonable access can be safely provided at another crossing. Whenever it is desired, either by the public officials having the necessary authority or by the railway company operating the railroad, to establish, vacate, or relocate any crossing of a public highway and a railroad, or to separate grades, and an agreement cannot be reached between the public official and the railway company, either as to the necessity for establishing, vacating, or relocating a crossing or for separating grades, as to place, manner of construction, or a reasonable division of the expense, either party may file a petition with the commission, setting forth the facts and submitting the matter to it for determination. The commission, after giving notice as it shall deem reasonable, shall conduct a hearing and shall issue its order determining whether there should be an establishment, vacation, or relocation of the crossing in question, or a separation of grades, and dividing the expense of the establishment, relocation, or separation of grades. Irrespective of the establishment, relocation, or the consideration of further reasonable protection of a crossing, if the commission finds any railroad crossing to be unnecessary or unsafe, it shall order the crossing closed after reasonable notice and hearing. Whenever a final order is

entered vacating or closing a crossing, it must be vacated or closed at the railroad company's expense.

The evidence reveals that in 1999-2000, BNSF supported closure of the "cemetery crossing," but the crossing was not closed due to opposition from local farmers and officials. BNSF had no power or authority to unilaterally close the "cemetery crossing." In addition, the events surrounding the proposed closure of the crossing in 1999-2000 are too remote in time to be relevant to the accident that occurred on November 5, 2008. The Court, in its discretion, concludes that evidence that BNSF was negligent for failing to close the "cemetery crossing" will be excluded at trial. However, the scant evidence before the Court reveals that BNSF arguably may have had notice that the Elevator may have been parking railcars closer than 250 feet from the crossing. The jury could reasonably determine that BNSF violated its broad and general duties under FELA by failing to ensure that the Elevator was parking railcars a proper and safe distance from the "cemetery crossing." There is a general duty under FELA to provide Campbell a reasonably safe place to work, enforce safety rules, and warn him of unsafe working conditions. Thus, evidence which directly relates to BNSF's knowledge of the Elevator's actions regarding parking railcars near or too close to the "cemetery crossing" may be admissible at trial. BNSF's motion concerning closure of the crossing in 1999-2000 is **GRANTED IN PART AND DENIED IN PART**.

## II.     CONCLUSION

The Court has considered the entire record, BNSF's motion, and the parties' responses. BNSF's motion in limine (Docket No. 111) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Dated this 2nd day of March, 2011.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court
