**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Robert C. Campbell and Brenda Southern, individually and as husband and wife, ) ) ) | |
| Plaintiffs, ) ) | **ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART ROLAND S. PEDERSON AND KC TRANSPORT, LLC'S MOTION IN LIMINE** |
| vs. ) ) | |
| BNSF Railway Company, a Delaware corporation; Roland S. Pederson; KC Transport, LLC, a Montana corporation; and Berthold Farmers' Elevator LLC, a North Dakota corporation, ) ) ) ) ) ) ) | Case No. 4:09-cv-49 |
| Defendants. ) | |

Before the Court is Defendants Roland S. Pederson and KC Transport, LLC ("KC Transport")'s motion in limine filed on February 2, 2011. See Docket No. 113. Defendant BNSF Railway Company ("BNSF") filed a response on February 8, 2011. See Docket No. 130. Defendant Berthold Farmers' Elevator ("the Elevator") filed a response on February 11, 2011. See Docket No. 132. The Plaintiffs filed a response on February 14, 2011. See Docket No. 146. Pederson and KC Transport filed a reply brief on February 16, 2011. See Docket No. 151.

**I.   BACKGROUND**

The facts of this case are set forth in detail in the Court's "Order Granting in Part and Denying in Part BNSF Railway Company's Motion for Summary Judgment." See Docket No. 110. On November 5, 2008, Plaintiff Robert C. Campbell was working as a conductor for BNSF. A train operated by Campbell struck a tractor trailer operated by Pederson and owned by KC Transport. The accident took place at the "cemetery crossing" near Berthold, North Dakota. The cemetery

crossing has four tracks. Empty railcars used by the Elevator were located on one of the tracks near the crossing.

## II.  LEGAL DISCUSSION

On February 8, 2011, Pederson and KC Transport filed several motions in limine requesting the following evidentiary rulings:

1)  to exclude the testimony of Clete Burbach;

2)  to exclude the testimony of Sharon Mollerud;

3)  to exclude evidence of Pederson's traffic citation;

4)  a special instruction regarding the volume of the train horn;

5)  to exclude evidence or argument regarding the operation of the tractor trailer "including the semi driver's ability to hear the horn and the time it would take the semi driver to perceive the oncoming train, react to it, apply the air brakes and allow the brakes to set up, and eventually come to a complete stop;"

6)  to offer an exemplar truck or a video; and

7)  to exclude evidence or argument regarding Campbell's future medical expenses.

See Docket No. 113.

### A.  TESTIMONY OF CLETE BURBACH

Clete Burbach is an investigator employed by BNSF who was involved in the investigation of the train accident on November 5, 2008. In his deposition, Burbach testified that one of the truck drivers employed by KC Transport told Burbach that the driver of the first truck attempted to

communicate with the other drivers via radio and inform them about the oncoming train. See Docket No. 94-4, pp. 21-23. Pederson and KC Transport contend that Burbach's testimony is inadmissable hearsay.

Rule 801 of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." However, a statement is not hearsay if it "is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). Any statement made by an employee of KC Transport to BNSF investigator Clete Burbach regarding the circumstances surrounding the accident is not hearsay under Rule 801(d)(2)(D). It is an admission of a party-opponent or an admission against interest. Pederson and KC Transport's motion to exclude Clete Burbach's testimony is **DENIED**.

### B. TESTIMONY OF SHARON MOLLERUD

Sharon Mollerud is an employee of the Berthold Farmers' Elevator. In her deposition, Mollerud testified that she gave directions to Pederson and the other drivers with KC Transport on how to get to Highway 2. Mollerud asserts that the drivers did not follow those directions and turned on the wrong road, which led them to the "cemetery crossing." Pederson and KC Transport seek to exclude this testimony and argue that it is irrelevant and that its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. BNSF and the Elevator argue that the testimony is evidence of Pederson and KC Transport's negligence. The Plaintiffs argue that the testimony is relevant background information as to how

the drivers arrived at the "cemetery crossing." The Court finds that the testimony is relevant and admissible.

Sharon Mollerud also testified in her deposition concerning a conversation she had with an employee of S & S Sales identified only as "Doug." Mollerud testified that "Doug" had a conversation with the KC Transport's drivers and relayed the drivers' remarks to her. If "Doug" is called to testify, he may testify as to statements made to him by KC Transport's employees as such statements are considered to be admissions against interest and are non-hearsay. However, any testimony Sharon Mollerud would attempt to offer regarding "Doug's" statements to her would be inadmissible hearsay. Pederson and KC Transport's motion to exclude Sharon Mollerud's testimony is **GRANTED IN PART AND DENIED IN PART**.

### C. PEDERSON'S TRAFFIC CITATION

Pederson and KC Transport seek to exclude evidence of the traffic citation issued to Pederson. As a result of this accident, Pederson was cited for failing to stop for a railroad crossing in violation of N.D.C.C § 39-10-42. See Docket No. 113-3. Pederson and KC Transport cite N.D.C.C § 39-06.1-03(4), which states in pertinent part:

> The fact that a person has admitted to a violation, or has, in any proceedings, been found to have committed a violation, may not be referred to in any way, nor be admissible as evidence in any court, civil, equity, or criminal, except in an action or proceedings involving that person's driving license or privilege.

According to the plain language of the statute, evidence of the issuance of a traffic citation to Pederson is inadmissible evidence at trial. The parties have not cited to, nor has the Court discovered, any exceptions to this statutory bar. Therefore, Pederson and KC Transport's motion to specifically exclude evidence of the issuance of a citation to Pederson is **GRANTED**.

### D. VOLUME OF THE TRAIN HORN

Pederson and KC Transport request that the Court provide the following cautionary instruction regarding the video of the accident:

1. That the microphone on the video camera is located only a short distance from that train horn; and

2. That the volume of the train horn is determined by how high or low the volume is turned on the machine playing the video; and

3. That the volume of the train horn heard on the video is not representative of the volume of the train horn which would reach Mr. Pederson; and

4. The volume on the video is being presented to the jury only to illustrate that the horn was sounded at the various locations indicated on the video.

See Docket No. 113. The Court will not provide a cautionary instruction regarding the volume of the train horn on the video. The parties are free to question any witness concerning the video and the circumstances surrounding how the video was recorded. The parties may also question any other witnesses, including KC Transport's drivers, the Elevator's employees, and BNSF's employees located near the crossing, concerning the volume of the train horn on the day of the accident. In addition, counsel may certainly comment during closing argument on the subject of the volume of the train horn and the video recording of the accident. However, Pederson and KC Transport's motion for a cautionary instruction regarding the video of the accident and the volume of the train horn is **DENIED**.

### E. OPERATION OF THE TRACTOR TRAILER

Pederson and KC Transport seek to exclude non-expert testimony regarding "the operations of the semi, including the semi driver's ability to hear the horn and the time it would take the semi

5

driver to perceive the oncoming train, react to it, apply the air brakes and allow the brakes to set up, and eventually come to a complete stop." See Docket No. 113. The Court is unaware of the particular witnesses who would offer such testimony. Witnesses that have personal knowledge regarding the operation of a tractor trailer may be allowed to offer relevant testimony based on that knowledge. All parties will be allowed to cross-examine such witnesses concerning the factual basis for their testimony. However, without knowing more about the potential testimony and which witnesses the motion is directed to, Pederson and KC Transport's motion to exclude non-expert testimony regarding the operation of a tractor trailer is **DENIED** at this early stage.

### F.     EXEMPLAR TRUCK/VIDEO

Pederson and KC Transport request that they be allowed to have the jury view a 1998 Peterbilt semi tractor, Model 379 extended hood, which they assert is the same year and model as the tractor trailer involved in the accident on November 5, 2008. In the alternative, Pederson and KC Transport seek to introduce a video of the tractor trailer. The Court, in its discretion, will not allow the jury to view an exemplar truck outside of the courtroom. Allowing the jury to view an exemplar truck would be unnecessarily time-consuming and burdensome and may result in further confusion, undue delay, waste of time, and possible prejudice. However, Pederson and KC Transport are free to offer relevant video evidence of the tractor trailer. Pederson and KC Transport's motion to allow the jury to view an exemplar truck or video evidence is **GRANTED IN PART AND DENIED IN PART**.

### G.      FUTURE MEDICAL EXPENSES

Pederson and KC Transport also seek to exclude evidence of Campbell's future medical expenses, and contend that the Plaintiffs cannot meet the standard required to prove the amount of future medical expenses proximately caused by the defendants' actions. BNSF and the Elevator join in the motion. See Docket Nos. 130 and 132. The Plaintiffs argue that the testimony of Campbell's two treating physicians will provide sufficient evidence to support Campbell's claim for future medical expenses, and the jury should be allowed to consider evidence of future medical expenses because there are different standards for claims under FELA as compared to common law negligence claims.

As the Court has explained, "The plaintiff's burden of proof in a FELA action is significantly lighter than it would be in an ordinary negligence case. In a FELA action, the railroad is liable if its negligence played any part, even the slightest, in producing the injury." See Docket No. 110 (quoting Magelky v. BNSF Ry. Co., 579 F. Supp. 2d 1299, 1304 (D.N.D. 2008)). Under North Dakota law, "To recover for future medical expenses, a plaintiff has the burden of showing substantial evidence to establish with reasonable medical certainty future medical services are necessary." Symington v. Mayo, 1999 ND 48, ¶ 9, 590 N.W.2d 450 (citing Erdmann v. Thomas, 446 N.W.2d 245, 247 (N.D. 1989)). The Court will **DEFER RULING** on Pederson and KC Transport's motion to exclude evidence of Campbell's future medical expenses.

### III. CONCLUSION

The Court has considered the entire record, Pederson and KC Transport's motion, and the parties' responses. Pederson and KC Transport's motion in limine (Docket No. 113) is **GRANTED IN PART, DENIED IN PART,** and **DEFERRED IN PART**.

**IT IS SO ORDERED.**

Dated this 2nd day of March, 2011.

>   */s/ Daniel L. Hovland*
>   Daniel L. Hovland, District Judge
>   United States District Court